Caitlin V. Mitchell, OSB No. 123964
cmitchell@justicelawyers.com
Kevin A. Yolken, OSB No. 231913
kyolken@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MARIAH RENEY DECKER**, | Case No.: 3:26-cv-625 |
| Plaintiff, | **COMPLAINT** |
| v. | Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983. |
| MULTNOMAH COUNTY, an Oregon County; NICOLE MORRISEY O'DONNELL, in her individual capacity; EDWIN DIAZ, in his individual capacity; SERGEANT KOHN, in his individual capacity; John and Jane Doe 1-10, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

---

### Introductory Statement

1.

Corrections Deputy Edwin Diaz raped Mariah Decker while she was incarcerated at the Multnomah County Detention Center. Diaz began targeting and grooming Ms. Decker, who suffered from mental illness and prior sexual victimization, shortly after Ms. Decker was booked into the jail. He

Page 1 - **COMPLAINT**

wrote her letters, paid her excessive attention, and took every opportunity to physically touch her. When Ms. Decker told him to stop and threatened to turn him in, he entered her cell at night, slammed her head repeatedly against the wall, and raped her. Diaz, who had been grooming and sexually assaulting vulnerable female prisoners for years, was indicted by a Grand Jury on 25 counts of custodial sexual misconduct, sexual abuse, and official misconduct, based on his abuse of Ms. Decker and a second victim. Plaintiff now brings this action under the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983.

### Jurisdiction & Venue

2.

This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Multnomah County, Oregon.

### Parties

3.

Plaintiff Mariah Decker is a woman. The unlawful acts that form the basis for this Complaint occurred when she was incarcerated at the Multnomah County Detention Center (MCDC), in Multnomah County, Oregon.

4.

Multnomah County is a county governmental entity organized under the laws of the State of Oregon and is a person for purposes of 42 U.S.C. § 1983. Multnomah County operates the Multnomah County Sheriff's Office (MCSO), which operates the Multnomah County Detention Center.

Page 2 - **COMPLAINT**

5.

Nicole Morrisey O'Donnell was the Multnomah County Sheriff during the time period at issue. She was responsible for the actions of the other members of the Multnomah County Sheriff's Office and for the creation and implementation of policies, customs and procedures at MCDC. At all times material she acted under color of state law.

6.

Edwin Diaz and Sergeant Kohn were correctional officers employed at MCDC during the time period at issue. At all times material they acted under color of state law.

7.

The John and Jane Doe Defendants 1-10 were employees of Multnomah County who worked at MCDC during the time period at issue, and who were directly involved in carrying out the unconstitutional acts described below. At all times material they acted under color of state law. This Complaint will be amended to state their true identities when they become known.

**Facts**

8.

In April 2023, Plaintiff Mariah Decker was booked into MCDC, where she spent approximately 15 months as a pre-trial detainee.

9.

During the intake process, Ms. Decker disclosed that she had multiple mental health issues including rape trauma and a phobia of men in close spaces. With these disclosures, Ms. Decker put MCDC on notice that she was particularly vulnerable to sexual victimization.

Page 3 - **COMPLAINT**

10.

MCDC housed Ms. Decker in the Alpha Module, a unit which (along with Bravo Module) served female prisoners with mental health conditions.

11.

Defendant MCDC Deputy Edwin Diaz regularly worked on Alpha and Bravo Units. Upon information and belief, Diaz sought those shifts in order to target, groom, and sexually assault vulnerable mentally-ill women. Diaz did not target similarly-situated male prisoners.

12.

Defendants were on notice of Diaz's predatory behavior. He had multiple victims and, as early as 2022, a female prisoner reported to MCDC that Diaz had raped her.

13.

Yet Defendants failed to adequately investigate or discipline Diaz, and they failed to take any precautions to protect female prisoners. They allowed Diaz to continue working on Alpha and Bravo Units. They failed to supervise him. They gave him unrestricted, unmonitored access to vulnerable mentally-ill women in custody, including Ms. Decker.

14.

Almost immediately after Ms. Decker was placed in Alpha, Diaz began paying special attention to her. He brought her snacks and sodas. He invited her to sit with him at the podium (where he had computer access) and offered to look up other prisoners and conduct Google searches for her. He sought to build a relationship with her and cultivate trust, telling her he was there for her if she needed someone to talk to. He told her he understood grief, as he had also experienced the death of loved ones. He asked her about her life.

Page 4 - **COMPLAINT**

15.

At some point during the first year of Ms. Decker's incarceration, Diaz helped arrange for her to be hired as a Trustee. Trustees are employed by MCDC to clean cells, serve trays, and do other similar tasks. They have special privileges and can move more freely about the facility. By making Ms. Decker a Trustee, Diaz was able to gain additional access to her. For example, it was common for him to pop open her cell door and ask her to accompany him to another part of the facility.

16.

As the months passed, Diaz became more openly flirtatious with Ms. Decker. He took any opportunity he could to touch her, for example, by putting his hand on her lower back while they walked through the facility. On at least one occasion he reached out and took her hand. Ms. Decker pulled away from Diaz's touching and became increasingly wary of him.

17.

In approximately late March 2024, Ms. Decker was moved from Alpha to Bravo Module. She hoped that with the move she would be separated from Diaz. Shortly after, however, Diaz began taking graveyard shifts on Bravo. Diaz began to write Ms. Decker explicitly romantic letters and leave them on her meal tray or slip them under her door.

18.

One day in approximately April 2024, Ms. Decker was at work cleaning out another prisoner's cell. She was struggling to fold a soiled mattress into a trash bag, when Diaz appeared at the cell door and offered to help. He then walked over and kissed Ms. Decker. Ms. Decker pulled away. She told him she was not interested.

Page 5 - **COMPLAINT**

19.

After that Diaz began to pursue Ms. Decker more aggressively. He found ways to watch her while she showered, telling her that he should get a "free show." He wrote notes saying he could not stop thinking about the kiss and that he wanted to give up his job so he could be with her. He said he couldn't wait for her to get out so he could see what she was like when she had a drink. Diaz also took Ms. Decker's side when she had a conflict with another prisoner. Noticing that Diaz treated Ms. Decker differently, others in Bravo and Alpha became suspicious and called her a rat.

20.

Increasingly uncomfortable and concerned for her safety, Ms. Decker told Diaz that if he wrote her one more note, she would turn him in. That night, Diaz came to Ms. Decker's cell and woke her up. He demanded that she turn over any of his notes that she had in her possession. He then asked why she was not at work. Ms. Decker, who was wearing only a T-shirt and shorts, moved to put on her shoes. As she did so, Diaz pushed her up against her cell's sink. He grabbed her face and attempted to kiss her, but she pulled away. Diaz said: "Don't you ever disrespect me like that again." He then slammed Ms. Decker against the wall, ripped off her shorts, and forcibly raped her. He hit her head repeatedly against the wall. When he finished, he spit on her and left. A short time later he returned, demanded that she turn over her underwear and shorts, and handed her clean clothes.

21.

When an MCDC med tech came to Ms. Decker's cell door the next morning to pass out her medications, Ms. Decker told her she needed to see medical. Her face was bruised and hurting. The med tech said that Ms. Decker "had a fit" the night before and that she was fine. The med tech refused to provide or arrange for medical attention.

Page 6 - **COMPLAINT**

22.

Ms. Decker later learned that Diaz had told others on the unit that she "had a fit," was banging her own head against the wall, and had tried to hurt another prisoner.

23.

A few days later Sergeant Kohn walked through Bravo Module. Seeing him, Ms. Decker began kicking her cell door and calling out loudly to get his attention. She told the sergeant that Diaz had raped her. She said she wanted to file a PREA report. The sergeant said she was lying and that he would not file a false PREA claim. He called her a piece of shit. He said, "No guy with a job like that would touch a girl like you."

24.

Upon information and belief, MCDC staff then retaliated against Ms. Decker by confining her to her cell and, after the confinement ended, by refusing to pay her for work she did as a Trustee. Decker asked to be moved out of MCDC, but her request was denied.

25.

The Prison Rape Elimination Act (PREA) requires MCDC to take specific steps to keep prisoners safe from sexual violence. PREA and its implementing standards require, among other things:

a. A zero-tolerance policy toward all forms of sexual abuse. 28 C.F.R. § 115.11(a);

b. Adequate staffing and video monitoring to protect prisoners from sexual abuse. 28 C.F.R. § 115.13(a);

c. Screening prisoners for risk of victimization. 28 C.F.R. § 115.41 (a)-(d).

d. Using information from risk screening to inform housing, bed, work education, and program assignments. 28 C.F.R. § 115.42(a);

Page 7 - **COMPLAINT**

e.  Employee training to ensure correctional staff compliance with PREA guidelines. 28 C.F.R. § 115.31;

f.  PREA education for prisoners during the intake process, within 30 days of intake, and upon transfer to a new facility. 28 C.F.R. § 115.33;

g.  Offering victims of sexual abuse access to a forensic medical examination. 28 C.F.R. § 115.21(c);

h.  Offering victims of sexual abuse access to a victim advocate from a rape crisis center. 28 C.F.R. § 115.21(d);

i.  Referring allegations of sexual abuse to an agency with the legal authority to conduct criminal investigations. 28 C.F.R. § 115.22;

j.  Providing a mechanism for prisoners to privately report sexual abuse and harassment, retaliation by inmates or staff, and staff neglect or violation of responsibilities that may have contributed to such incidents. 28 C.F.R. § 115.51(a);

k.  Requiring staff to report immediately any knowledge, suspicion, or information regarding an incident of sexual abuse or harassment; retaliation against prisoners who report such an incident; and any staff neglect or violation of responsibilities that may have contributed. 28 C.F.R. § 115.61;

l.  Upon learning that a prisoner is subject to a substantial risk of imminent sexual abuse, taking immediate action to protect the prisoner. 28 C.F.R. § 115.62;

m.  Protecting prisoners who report sexual abuse from retaliation, including monitoring such prisoners for 90 days. 28 C.F.R. § 115.67;

n.  Conducting investigations, as outlined in 28 C.F.R. § 115.71;

Page 8 - **COMPLAINT**

o.  Providing mental health evaluation and treatment, including follow-up services and continued care. 28 C.F.R. § 115.83.

26.

MCDC failed to comply with the above-described mandates of PREA and its own policies. Among other violations, it failed to investigate or to offer Ms. Decker medical care or counseling. It did not protect her from retaliation.

27.

On June 18, 2025, a Grand Jury indicted Edwin Diaz with 25 criminal counts, including multiple counts of custodial sexual misconduct, sexual abuse, and official misconduct, based on acts perpetrated against Decker and a second victim. It turned out that Diaz, who had worked at MCDC since approximately 2017, had been systematically targeting female prisoners for years. Selecting women who were particularly vulnerable, he engaged in grooming tactics to gain their trust; then he raped them.

28.

After Diaz was criminally charged, Defendant Multnomah County placed him on unpaid administrative leave. He retired in August of 2025.

29.

The criminal case, as well as investigation into Diaz' potential crimes against other victims, is on-going.

**FIRST CLAIM FOR RELIEF**
**U.S. Constitution 14th Amendment – Due Process / Unlawful Conditions of Confinement**
**42 U.S.C. § 1983**

**Count 1: Against Defendant Edwin Diaz**

Plaintiff realleges paragraphs 1 through 29 as though fully set forth herein.

Page 9 - **COMPLAINT**

30.

The 14th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, guaranteed Plaintiff, a pre-trial detainee, the Due Process right to be free from punishment / unlawful conditions of confinement, including the right to be free from sexual assault by corrections officers.

31.

Defendant Diaz violated Plaintiff's Fourteenth Amendment rights by using his government position to exert influence and physical control over Plaintiff in order to sexually assault her. A correctional officer's act of sexually assaulting a prisoner is inherently malicious and sadistic. There is never a valid governmental purpose for sexual assault.

32.

Defendant took the above-described actions under color of state law.

33.

As a result of Defendant's unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to physical injury, pain and suffering, emotional injury, humiliation, and terror.

34.

Defendant showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

35.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Count 2: Against Defendants Nicole Morrisey O'Donnell, Sergeant Kohn,**

**and John and Jane Does 1-10**

Plaintiff realleges paragraphs 1 through 29 as though fully set forth herein.

36.

The 14th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, guaranteed Plaintiff, a pre-trial detainee, the Due Process right to be free from punishment / unlawful conditions of confinement, including the right to be free from sexual assault by corrections officers.

37.

Defendants Nicole Morrisey O'Donnell, Sergeant Kohn, and John and Jane Does 1-10 were deliberately indifferent to Plaintiff's Fourteenth Amendment rights by knowingly exposing her to a substantial risk of sexual assault and by failing to take reasonable measures to abate that risk, in ways including but not limited to the following:

(a) Allowing Diaz to have unfettered access to Plaintiff, despite being on notice that he had a history of targeting and sexually assaulting female prisoners, and despite knowing that Plaintiff was particularly vulnerable to exploitation based on her mental health and prior sexual victimization;

(b) Failing to adequately supervise Diaz;

(c) Failing to make a PREA report when Plaintiff reported the assault;

(d) Failing to train employees and/or enforce rules, policies, processes, or procedures meant to ensure that vulnerable prisoners are protected from sexual violence;

(e) Failing to investigate Plaintiff's report of sexual assault;

(f) Failing to provide Plaintiff with medical and mental health treatment;

(g) Failing to protect Plaintiff from further harassment and retaliation following the sexual assault;

Page 11 - **COMPLAINT**

(h) Failing to ensure that Plaintiff was adequately monitored, whether through staffing or video monitoring;

(i) Knowing of but failing to enforce or comply with PREA standards;

(j) Acquiescing in and/or approving of the above acts.

38.

Defendants took the above-described actions under color of state law.

39.

As a result of Defendants' unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to physical injury, pain and suffering, emotional injury, humiliation, and terror.

40.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

41.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 Violation of the 14th Amendment—Right to Bodily Integrity**

**Count 1: Against Defendant Diaz**

Plaintiff realleges paragraphs 1 through 29 as though fully set forth herein.

42.

The 14th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, enshrines Plaintiff's right to be free from governmental violations of bodily integrity.

Page 12 - **COMPLAINT**

43.

Defendant Diaz violated Plaintiff's Fourteenth Amendment right to bodily integrity by using his government position to exert influence and physical control over Plaintiff in order sexually harass and sexually assault her. Diaz' actions were an abuse of power, and were egregious, outrageous, and shocking to the conscience.

44.

Defendant took the above-described actions under color of state law.

45.

As a result of Defendant's unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to physical injury, pain and suffering, emotional injury, humiliation, and terror.

46.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

47.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Count 2: Against Defendants Nicole Morrisey O'Donnell, Sergeant Kohn,**

**and John and Jane Does 1-10**

Plaintiff realleges paragraphs 1 through 29 as though fully set forth herein.

48.

The 14th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, enshrines Plaintiff's right to be free from governmental violations of bodily integrity.

49.

Defendants violated Plaintiff's Fourteenth Amendment right to bodily integrity by knowingly exposing Plaintiff, a vulnerable female detainee, to a substantial risk of sexual harassment and assault and failing to take reasonable measures to abate that risk, in ways including but not limited to the following:

(a) Allowing Diaz to have unfettered access to Plaintiff, despite being on notice that Diaz had a history of targeting and sexually assaulting vulnerable female prisoners, and despite knowing that Plaintiff was particularly vulnerable to exploitation based on her mental health and prior sexual victimization;

(b) Failing to adequately supervise Diaz;

(c) Failing to make a PREA report when Plaintiff reported the assault;

(d) Failing to train employees and/or enforce rules, policies, processes, or procedures meant to ensure that vulnerable female prisoners are protected from sexual violence;

(e) Failing to investigate Plaintiff's report of sexual assault;

(f) Failing to provide Plaintiff with medical and mental health treatment;

(g) Failing to protect Plaintiff from further harassment and retaliation following the sexual assault;

(h) Failing to ensure that Plaintiff was adequately monitored, whether through staffing or video monitoring;

(i) Knowing of but failing to comply with PREA standards;

(j) Acquiescing in and/or approving of the above acts.

50.

Defendants' actions were an abuse of power, and were egregious, outrageous, and shocking to the conscience.

51.

Defendants took the above-described actions under color of state law.

52.

As a result of Defendants' unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to physical injury, pain and suffering, emotional injury, humiliation, and terror.

53.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

54.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 Violation of the 14th Amendment—Discrimination Based on Sex**

**Count 1: Against Defendant Diaz**

Plaintiff realleges paragraphs 1 through 29 as though fully set forth herein.

55.

The 14th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, enshrines Plaintiff's right to be free from governmental discrimination based on sex.

Page 15 - **COMPLAINT**

56.

Defendant Diaz violated Plaintiff's Fourteenth Amendment rights by targeting her, as a vulnerable female detainee, and sexually assaulting her. Diaz did not target and sexually assault similarly situated male detainees.

57.

There is no exceedingly persuasive justification for Defendant's discrimination.

58.

Defendant took the above-described actions under color of state law.

59.

As a result of Defendant's unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to physical injury, pain and suffering, emotional injury, humiliation, and terror.

60.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

61.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Count 2: Against Defendants Nicole Morrisey O'Donnell, Sergeant Kohn, and John and Jane Does 1-10**

Plaintiff realleges paragraphs 1 through 29 as though fully set forth herein.

Page 16 - **COMPLAINT**

62.

The 14th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, enshrines Plaintiff's right to be free from governmental discrimination based on sex.

63.

Defendants were deliberately indifferent to Plaintiff's 14th Amendment right to be free from governmental discrimination based on sex by knowingly exposing Plaintiff, a vulnerable female detainee, to a substantial risk of sexual harassment and assault and failing to take reasonable measures to abate that risk, in ways including but not limited to the following:

(a) Allowing Diaz to have unfettered access to Plaintiff, despite being on notice that Diaz had a history of targeting and sexually assaulting vulnerable female prisoners, and despite knowing that Plaintiff was particularly vulnerable to exploitation based on her mental health and prior sexual victimization;

(b) Failing to adequately supervise Diaz;

(c) Failing to make a PREA report when Plaintiff reported the assault;

(d) Failing to train employees and/or enforce rules, policies, processes, or procedures meant to ensure that vulnerable female prisoners are protected from sexual violence;

(e) Failing to investigate Plaintiff's report of sexual assault;

(f) Failing to provide Plaintiff with medical and mental health treatment;

(g) Failing to protect Plaintiff from further harassment and retaliation following the sexual assault;

(h) Failing to ensure that Plaintiff was adequately monitored, whether through staffing or video monitoring;

(i) Knowing of but failing to comply with PREA standards;

(j) Acquiescing in and/or approving of the above acts.

64.

There is no exceedingly persuasive justification for Defendants' discrimination.

65.

Defendants took the above-described actions under color of state law.

66.

As a result of Defendants' unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to: physical injury, pain and suffering, emotional injury, humiliation, and terror.

67.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

68.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. §1983 Violation of the 14th Amendment**
***Monell* Claims against Defendant Multnomah County**

Plaintiff realleges paragraphs 1 through 68 as though fully set forth herein.

69.

The moving forces that resulted in the deprivation of Plaintiff's Fourteenth Amendment rights were policies, practices, or customs of Multnomah County, including but not limited to:

(1) Maintaining a de facto policy, practice, or custom of failing to protect prisoners from

   targeting, grooming, and sexual assault by jail staff;

Page 18 - **COMPLAINT**

(2) Maintaining a de facto policy, practice, or custom of failing to adequately investigate, or take action to correct, sexual misconduct by jail staff;

(3) Failing to adequately train jail staff on compliance with PREA.

70.

The above-described policies, practices, or customs were maintained with deliberate indifference. Defendant Multnomah County knew that such policies created a substantial risk that jail staff would sexually abuse vulnerable female detainees such as Plaintiff. Despite this, Defendant did not take reasonable measures to abate the risk.

71.

As a direct result of the above-described policies, customs or practices of Defendant Multnomah County, Plaintiff was sexually harassed and assaulted by corrections deputy Edwin Diaz.

72.

As a result of Defendants' unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to: physical injury, pain and suffering, emotional injury, humiliation, and terror.

73.

Plaintiff is entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for relief as follows:

a.   For judgment in favor of Plaintiff against Defendants;

b.   An award of damages, including punitive damages, in an amount to be established at trial;

c.   An award of pre- and post-judgment interest;

d.   An award of costs and attorney fees pursuant to 42 U.S.C. §1988(b); and

Page 19 - **COMPLAINT**

e.   Such other relief as is just and equitable.

Respectfully submitted this 30th day of March, 2026

JOHNSON JOHNSON LUCAS & MIDDLETON PC

_____

**Caitlin V. Mitchell**, OSB No. 123964
cmitchell@justicelawyers.com
**Kevin A. Yolken**, OSB No. 231913
kyolken@justicelawyers.com
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for Plaintiff

Page 20 - **COMPLAINT**